UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Bryan Dixon, | Civil Action No.: 4:17-CV-02132-RBH |
| Plaintiff, | |
| v. | **ORDER** |
| Open Hands Nurseing Agency, LLC and James Holmes, | |
| Defendant. | |

Plaintiff filed a Complaint against Defendants on August 11, 2017, alleging violations of the Fair Labor Standards Act, as amended 29 U.S.C. § 201 *et seq.* (the "FLSA").This matter is before the Court on a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment filed on June 20, 2018 by Defendants Open Hands Nurseing Agency, LLC ("Open Hands") and James Holmes, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5) and 56. [ECF #15]. On August 6, 2018, Plaintiff filed his Response in Opposition to the Motion. [ECF #21]. Defendants filed a Reply on August 13, 2018. [ECF #22]. The Court has had the opportunity to thoroughly review the pleadings of record and consider arguments of counsel.[1] This Court now issues the following Order.

**Background**

According to the allegations within the Complaint, Open Hands is a home healthcare provider service for individuals living outside of nursing homes, such as individuals living at a residence or in the community. [ECF #1, ¶ 6]. Defendant James Holmes is the owner of Open Hands. [ECF #15, p. 2]. Since November 2014, Plaintiff Bryan Dixon alleges he worked as a nurse assistant for Open Hands.

---

[1] Under Local Civil Rule 7.08 (D.S.C.), "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." Upon review of the briefs, the Court finds that a hearing is not necessary.

1

[ECF #1, ¶¶ 4-5]. As alleged in the Complaint, Defendant Holmes is an individual "substantially in control of the terms and conditions of Plaintiff's work" and therefore also an employer of Plaintiff as defined by the FLSA. [ECF #1, ¶¶ 7-8]. Plaintiff alleges that Defendants repeatedly and willfully violated the FLSA by failing to compensate Plaintiff for overtime wages. [ECF #1, ¶¶ 15-16]. Defendants filed an Answer on November 6, 2017, denying these claims and asserting numerous defenses including defenses based upon Federal Rules of Civil Procedure 12(b)(1) through 12(b)(6). [ECF #9, p. 1]. Discovery ended on June 5, 2018. On June 20, 2018, Defendants filed their Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. [ECF #15]. The Motion alleges several grounds for dismissal of the lawsuit and/or for summary judgment. Defendants argue that dismissal of the lawsuit is appropriate because Plaintiff has not properly served Defendants. [ECF #15]. Alternatively, Defendants argue that summary judgment is appropriate because Plaintiff has not proven that the FLSA applies to these Defendants, and even if the FLSA did apply, Plaintiff does not state a claim for relief under the FLSA, and further, that the claim is time-barred. [ECF #15]. Plaintiff filed a response on August 6, 2018 arguing that the Motion should not be granted. [ECF #21]. Defendants filed a reply on August 13, 2018. [ECF #22]. Defendants state within their Motion that Plaintiff did not convene any depositions or engage in any meaningful discovery to support the allegations provided for in the Complaint. [ECF #15, p. 2]. Plaintiff filed as evidence Defendants' Initial Disclosures, an affidavit prepared by Plaintiff, and the Affidavits of Service with their response. [ECF #21]. Defendants have produced several tax documents, an independent contractor agreement, and a document from the Secretary of State's website. [ECF #15]. These documents are the only evidence in the record upon which the Parties have to rely in making arguments for and against summary judgment. This Court will now consider Defendants' Motion.

**Discussion**

**I. Dismissal Based on Alleged Improper Service**

Defendants argue that Plaintiff's Complaint must be dismissed pursuant to Rules 12(b)(1) and Rule (b)(5) because Plaintiff has not filed any affidavits of service proving that Defendants were properly served within ninety (90) days after the filing of the Complaint, and that in any case, service was improper. Attached to Plaintiff's response are the Affidavits of Service. [ECF #21-3]. Plaintiff argues that Defendants waived any claim of improper service, and further, that Defendants had actual notice of this lawsuit; therefore Plaintiff argues this case should not be dismissed due to alleged improper service.

Rule 12(b)(1) is an affirmative defense asserting that the court lacks subject-matter jurisdiction to hear one or more claims. When a Rule 12(b)(1) motion is raised challenging the factual basis for subject matter jurisdiction, the burden of proving the existence of subject matter jurisdiction is on the plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A court may consider evidence by affidavit, depositions, or live testimony without converting a motion to dismiss to one for summary judgment. *Id.* A Rule 12(b)(5) motion is appropriate when a defendant argues as a defense to a claim that there was insufficient service of process. The plaintiff bears the burden of proving adequate service once a motion to dismiss for insufficient service of process has been filed. *Scott v. Md. State Dep. of Labor*, 673 Fed. Appx. 299, 304 (4th Cir. 2016); *see generally Howe v. Embassy of Italy*, 68 F. Supp. 3d 26, 30 (D.D.C. 2014) (citing 4A Wright & Miller § 1083).

Under Federal Rule of Procedure 4(m), a defendant must be served within ninety (90) days after a complaint has been filed. Federal Rule of Procedure 4(l) requires that proof of service be made to the

3

court unless service has been waived.[2] Here, though initially the Affidavits were not a part of the record, a review of these documents now made a part of the record show that within ninety days, service was attempted on the Defendants, defective or not. Assuming service has not been waived, service is accomplished upon an individual defendant by delivering a copy of the summons and complaint to the individual personally; leaving a copy at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or by delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(e)(2). Service is accomplished upon a corporate defendant by delivering a copy of the summons and the complaint to an officer, managing or general agent, or any other agent authorized by appointment or by law to receive service of process and–if the agent is one authorized by statute and the statute so requires–by also mailing a copy of the summons and complaint to the defendant. Fed. R. Civ. P. 4(h)(1)(b). Service may also be accomplished on either an individual or corporate defendant by following the state law for service in the state where the district court is located. Fed. R. Civ. P.4(e)(1).[3]

---

[2] Defendants argue initially that there is no documentation in the record that service was accomplished within ninety (90) days, and even if Plaintiff can demonstrate that, Plaintiff cannot show that service was made on the registered agent. [ECF #15, pp. 8-9]. While it is true that Plaintiff did not initially file certificates showing compliance with Rule 4, Plaintiff attached affidavits of service as exhibits to its response motion on August 6, 2018.

[3] South Carolina's service requirements under Rule 4 are substantially similar to those found in Federal Rule of Civil Procedure 4. To serve an individual defendant, service is perfected by delivering a copy of the summons and complaint to the defendant personally, or by leaving a copy at his dwelling place or usual place of abode with a person of suitable age or discretion residing therein, or by delivering a copy to an agent authorized by appointment or by law to receive service. Rule 4(d)(1). Service upon a corporation may be effectuated by delivering a copy of the summons and complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process, and if the agent is one authorized by statute to receive service, and the statute so requires, by also mailing a copy to the defendant. S.C. Rule 4(d)(3).

Here, there is no evidence that either Defendant expressly waived service. Further, Defendants raised 12(b)(1) and 12(b)(5) defenses in their Answer.[4]

In reviewing the affidavits of service, it appears that on September 21, 2017, a summons and complaint for "Francena Holmes" was personally served on her at 1629 South Center Road, Darlington, South Carolina. [ECF #21-3, p. 2]. Francena Holmes is listed as the registered agent for Open Hands on the summons provided by Plaintiff. [ECF #4]. The address listed where Francena Holmes was served is the address Plaintiff provided on the summons as the location of Defendant Open Hands. [ECF #4]. This same information matches the information shown online at the South Carolina Secretary of State website for Defendant Open Hands. [ECF #15-2, p. 1]. This affidavit appears to be technically incorrect in that, rather than listing Defendant Open Hands as the "person" to be served, the affidavit is incorrectly filled out as if personal service was made upon the registered agent at the business address, rather than service upon a corporation via the registered agent. Still, it evidences the fact that the registered agent was served at the corporate location with the lawsuit. *See Morrel v. Nationwide Mut. Fire Ins. Co.*, 188 F.3d 218, 223-224 (4th Cir. 1999) (explaining the long standing rule that service of process is not legally defective simply because the complaint misnames the defendant in some insignificant way); *United States v. A.H. Fischer Lumber Co.*, 162 F.2d 872, 873 (4th Cir. 1947) (noting that if process names a defendant "in such terms that every intelligent person understands who is meant . . . it has fulfilled its purpose"). Moreover, in reviewing the second affidavit of service, it appears that

---

[4] Plaintiff argues that Defendants have waived any claim that this Court does not have jurisdiction because the Defendants answered the complaint, denying numerous allegations and asserting numerous defenses. Rule 12(b) provides that no defense or objection is waived by joining it with one or more other defenses or objections. Rule 12(h)(1)(b) states that a party waives a defense listed in Rule 12(b)(2)-(5) by failing to include it in a responsive pleading. This Court does not read by the case law cited by Plaintiff to hold that, by raising these defenses in its Answer, Defendants have waived the right to argue them on a motion to dismiss. *Pusey v. Dallas Corp.*, 938 F.2d 498, 501 (4th Cir. 1991) (discussing the possibility of waiver and holding that waiver is possible by failing to raise the defense of service of process either in a pre-answer motion *or* in the answer.) (emphasis added). In any event, this Court acknowledges that Defendants advance substantive arguments going to the merits of Plaintiff's claim within the remainder of their Motion.

5

on September 21, 2017, a summons and complaint for James Holmes was served on an individual named Sharon Allen, apparently the agency director for Open Hands. [ECF #21-3, p. 3]. Thus, the affidavits of service reflect the fact that both the registered agent and an "agency director" for Open Hands were served with a summons and complaint at Open Hands's business location. Defendant Open Hands does not dispute that Ms. Allen is the agency director for Open Hands, nor does Open Hands dispute Francena Holmes is the registered agent.

Although required to properly name parties under Rule 4 of the Federal Rules of Civil Procedure, the Fourth Circuit has recognized that failure to comply with Rule 4 will not mandate dismissal where a party has received actual notice of a lawsuit and the party has not been prejudiced by the technical defect. *See Smith v. South Carolina Community Bank,* No. 3:13-0034, 2013 WL 4056310, at *3 (D.S.C. Aug. 9, 2013) (citing *Karlsson v. Rabinowitz*, 318 F.2d 666, 668-69 (4th Cir. 1963)); *Fields v. Norfolk and Southern Ry. Co.*, 924 F. Supp. 2d 702, 708 (S.D.W.V. 2012). Defendant Open Hands does not dispute it received actual notice of the lawsuit, or provide any argument to suggest it has been prejudiced by any alleged technical defect in the service documents. Accordingly, this Court finds that with respect to Open Hands, a review of the Affidavits of Service show that Plaintiff substantially complied with the requirements of Rule 4, and that Defendant Open Hands received actual notice of the complaint. However, neither affidavit of service evidences any indication that the individual defendant, Defendant James Holmes was served either personally or by a person of suitable age and discretion at his residence. The affidavits of service shows that the summons for James Holmes was served upon the agency director of Open Hands. [ECF #21-3]. This does not constitute sufficient evidence to determine that Defendant Holmes received legally sufficient notice of this lawsuit. Therefore, this Court finds that it lacks jurisdiction over Defendant Holmes, and this lawsuit

6

must be dismissed without prejudice as to Defendant James Holmes. Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice.").

### II. Plaintiff's FLSA claim for overtime wages

Defendants argue that summary judgment is appropriate as to Plaintiff's claim under the FLSA because Plaintiff has failed to establish: (1) that there is coverage under the FLSA; (2) that an employer-employee relationship exists as defined by the FLSA; and (3) that there is a cognizable claim for overtime wages. In response, Plaintiff argues that Defendant has not met its burden to establish that summary judgment is appropriate as to any coverage issues under the FLSA and has failed to establish a lack of an employer-employee relationship. Further, Plaintiff argues that the evidence supports a finding that he has established that he has a cognizable FLSA claim. This Court will address each argument in turn.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). When no genuine issue of any material fact exists, summary judgment is appropriate. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

7

judgment; the requirement is that there be no genuine issue of material fact." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986))**.**

Defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If Defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." *Id.* at 718–19 (citing *Anderson*, 477 U.S. at 247–48).

Moreover, "once the moving party has met its burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *See id*; *Doyle v. Sentry, Inc.*, 877 F. Supp. 1002, 1005 (E.D. Va. 1995). Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Baber*, 977 F.2d at 875 (citing *Celotex*, 477 U.S. at 324)). Moreover, the nonmovant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *DeLeon v. St. Joseph Hosp., Inc.*, 871 F.2d 1229, 1223 n.7 (4th Cir. 1989).

### 1. Coverage under the FLSA

Defendant argues that Plaintiff cannot recover for overtime wages alleged owed because under the FLSA, Open Hands is not a covered entity and Plaintiff was not an employee engaged in commerce. Plaintiff responds first that Defendant was required to put forth evidence to affirmatively prove that

Defendant Open Hands was not a covered entity, and second that the evidence in the record, viewed in the light most favorable to Plaintiff, shows that coverage indeed applies under the FLSA.

The FLSA requires employers to pay covered employees[5] overtime at one and a half times the pay rate if the employee works more than forty hours in a workweek. 29 U.S.C. § 207(a)(1). Under the FLSA, there are two scenarios where coverage for overtime wages applies: individual coverage or enterprise coverage. *Ramirez v. Amazing Home Contractors, Inc.*, 114 F. Supp.3d 306, 309 (D. Md. 2015). Section 207 of the FLSA states a "covered employee" is one who is either "engaged in commerce or in the production of goods for commerce" ( individual coverage), or is employed in "an enterprise engaged in commerce or in the production of goods for commerce" (enterprise coverage). 29 U.S.C. § 207(a)(1). FLSA coverage is an essential part of Plaintiff's claim; thus, it is incumbent upon Plaintiff to establish such coverage exists. *Ramirez*, 114 F. Supp.3d at 309; *see generally Velasquez v. Salsas and Beer Rest. Inc.*, 735 Fed. Appx. 807 (4th Cir. 2018) (concluding that that FLSA coverage is an element of the FLSA claim, rather than a jurisdictional requirement); *Chao v. Hotel Oasis, Inc.*, 493 F.2d 26, 33 (1st Cir. 2007). Therefore, contrary to Plaintiff's assertion, Defendants do not need to prove the absence of FLSA coverage; rather, the burden of proof to establish individual or enterprise coverage is upon Plaintiff. *Ramirez*, 114. F. Supp. 3d at 309-310. In reviewing the Complaint and arguments asserted by the parties, Plaintiff claims that both individual and enterprise coverage apply. Therefore, this Court will consider whether Plaintiff has established coverage under either situation.

This Court finds that Plaintiff has failed to establish enterprise coverage under the FLSA because he has not shown that Defendant Open Hands is a covered entity under the FLSA. An

---

[5] Whether an employer-employee relationship exists as defined under the FLSA is also in dispute in the Motion filed by Defendants and will be addressed separately.

employee can claim enterprise coverage if he is employed in an enterprise "engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). An enterprise is defined as having employees "handling, selling or otherwise" working on goods or materials that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1)(A)(i). The employer must also have "annual gross volume of sales made or business done" of not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(ii). Here, Plaintiff points to Defendant's Initial Disclosures and states that the following information is "telling evidence" that there is FLSA coverage: (1) Defendant employs 65-70 individuals; and (2) Defendant paid Plaintiff $15,288.05 in 2015 and $32,130 in 2016. [ECF #21-2].[6] Without citing to the record, Plaintiff also asserts that the 65 to 70 individuals that Defendant identifies as employees are engaged in "the same capacity as Plaintiff." [ECF #21, p. 7]. Further, Plaintiff states that Defendant admitted to Plaintiff that the company cares for "over 200 client accounts." The evidence Plaintiff uses to support this fact is a reference to his own affidavit stating that he saw a notice posted in Defendant's offices, which apparently identified the number of accounts of Defendant Open Hands. [ECF #21-1, ¶ 5]. This is the basis upon which Plaintiff asserts that "logic dictates" a finding that the gross combined salaries of Defendant's employees would exceed $500,000.00. The notice apparently stating Defendant has 200 client accounts is the only evidence Plaintiff cites to conclude that Open Hands grosses more than $500,000 per year in revenue. The fact that Defendant apparently had 200 accounts at one point in time, the salary of Plaintiff for two of the years he has been employed with Defendant, and the number of total persons employed by Defendant, is insufficient evidence to meet Plaintiff's burden of showing that Open Hands grosses more than $500,000 per year in revenue and wages paid. First, as pointed out previously, not all of Plaintiff's allegations are supported by the record. Second, the conclusions

---

[6] Plaintiff argues that Defendants have put forth documents before the Court without "any authentication." [ECF #21, p. 9]. However, Plaintiff also uses at least one of these documents, Plaintiff's 1099 Forms for Plaintiff, as evidence to prove that Plaintiff's claims should be covered under the provision of the FLSA.

Plaintiff seeks to make based on the evidence in the record, are speculative, at best. This Court would have to assume that all employees performed a substantially similar job as Plaintiff, worked roughly the same hours, and were paid the same amount. Moreover, even accepting as true that Plaintiff saw a notice evidencing the fact that Open Hands had 200 client accounts, this Court cannot ascertain when that notice was posted, whether these accounts were all active accounts, and how much each account grossed in revenue. Accordingly, Plaintiff has failed to carry his burden of establishing enterprise coverage under the FLSA.

With respect to individual coverage, Defendant first argues that Plaintiff is not engaged in interstate commerce and cannot produce any evidence suggesting otherwise because the nature of Defendant's business is home-based community services. Further, Defendant argues that Plaintiff provides home healthcare assistance to a family member who resides with him at a home in South Carolina. [ECF #14, p. 2]. In response, Plaintiff attached to his response to the Motion his own affidavit to establish that FLSA coverage applies under the individual coverage scenario. Within his affidavit, Plaintiff states that one of his "regular and recurring job duties" was to open and handle a patient's "interstate" and "intrastate" mail and deliveries, as well and make and answer telephone calls from insurance companies and other vendors located outside of the State of South Carolina. [ECF #21-1, ¶ 3]. Plaintiff further states that shipments of medications came shipped from Kansas, and that Plaintiff used products with labels stating they were manufactured in Illinois, New Jersey, and other places outside of South Carolina. [ECF #21-1, ¶¶ 8-10 ].

The FLSA overtime provisions apply to an employee who in a workweek is engaged in commerce or in the production of goods. *Russell v. Cont. Restaurant, Inc.*, 430 F. Supp. 2d 521, 524 (D. Md. 2006). An employee is "engaged in commerce" if he is "in the channels of interstate

commerce" as opposed to simply affecting commerce. *McLeod v. Threlkeld*, 319 U.S. 491, 494 (1943); *see generally Ergashov v. Global Dynamic Transp., LLC*, 680 Fed Appx. 161, 162 (4th Cir. 2017). Individual coverage focuses on the activities of the *employee*, rather than the employer. *Bellows v. Darby Landscaping*, No. WDQ-15-885, 2016 WL 264914, at *4 (D. Md. 2016). The appropriate inquiry is whether the work is so directly and vitally related to the functioning of a facility engaged in interstate commerce, rather than isolated local activity. *Id.* (citing *Wirtz v. Modern Trashmoval, Inc.*, 323 F.2d 451, 457 (4th Cir. 1963)).[7]

Once a defendant has established the absence of a genuine issue of material fact, a non-moving party must come forward and provide evidence beyond "a mere scintilla of evidence" upon which a jury could rely to show an issue of fact. *Barwick v. Celotex Corp.*, 736 F.2d 946, 957 (4th Cir. 1984). The decision of whether coverage exists must be made on practical considerations, rather than technical conceptions. *Wirtz v. Modern Trashmoval, Inc.*, 323 F.2d 451, 456 (4th Cir. 1963)). The only evidence in the record regarding Plaintiff's duties as it relates to his alleged employment with Defendant Open Hands is provided for by his own affidavit. *See generally Pronin v. Vining*, No. 5:13-cv-03423, 2016 WL 1253182, at *3 (D.S.C. March 13, 2016) ("a party may not rest on self-serving conclusory allegations to survive summary judgment") (citing *Smith v. Beck*, 2011 WL 65962, at *7 (M.D.N.C. Jan. 10, 2011)). In reviewing Plaintiff's affidavit, this Court is unable to ascertain whether the job duties he handled while working as a nurse assistant were indeed within the scope of his employment because the record contains no evidence of the specific job duties were for which Defendant would provide compensation, and as Defendant stated within the Motion, and Plaintiff has not disputed,

---

[7] As an initial matter, Plaintiff's reliance on two cases he asserts are on point are misplaced in this context. In both *Marshall v. Brunner*, 668 F.2d 748, 751 (3d Cir 1982) and *Brennan v. Iowa*, 494 F.2d 100 (8th Cir. 1974), the inquiry was more focused on whether an enterprise was engaged in commerce. Further, the parties in both *Brunner* and *Brennan* stipulated to the relevant facts, some of which appear related to the inquiry into whether the enterprise was involved in interstate commerce.

Plaintiff worked for a family member and lived in the residence. [ECF #15-1, p. 3]. This Court further notes that the job duties provided for in Plaintiff's affidavit in response to summary judgment are much more expansive than those he listed within the Complaint and in his Initial Disclosures.[8] Nonetheless, assuming all of Plaintiff's statements within his affidavit are true, these statements alone suffice to establish coverage under the FLSA.

The FLSA regulates employees engaging in activities constituting interstate commerce, not activities merely affecting commerce. *Geer v. McGregor,* No. 8:10-2219, 2013 WL 808838, at *3 (D.S.C. March 5, 2013) (citing *Thorne v. All Restoration Services, Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006). Plaintiff argues that he handled goods that were manufactured in other states, including medications shipped from another state. It is settled law that employees who handle goods which are acquired by a merchant for general local disposition are not engaged in commerce for purposes of the FLSA. *McLeod*, 319 U.S. 491, 494 (finding that an employee who worked as a cook and caretaker for maintenance men on a railroad were not engaged in the production of goods for commerce, nor was he engaged in commerce); *see also Russell*, 430 F. Supp. 2d at 526 (finding that Plaintiff's handling of restaurant produce that might have an out-of-state origin does not demonstrate the plaintiff has having engaged in interstate commerce). Here, Plaintiff states that he administers these medications and medical supplies acquired by another company for use by an individual patient. Plaintiff does not specify whether he purchased these medications or supplies on behalf of the patient, or whether they are shipped to patient's home, and he simply assists the patient in using them. *See Wirtz*, 323 F.2d at 457 (finding that trash collectors who collected trash from a customer who was engaged in the production of goods for commerce were not "engaged in commerce"). In *Bellows*, a district court

---

[8] For example, in both his Complaint and in the Initial Disclosures, Plaintiff stated that his principle duties were "to provide health care, cooking, and cleaning services" to clients. [ECF #1; ECF #13]. It was not until responding to summary judgment that Plaintiff articulates job duties to include opening mail and handling telephone calls from various out-of-state companies.

rejected the argument that a lawn foreman, who argued he used chemicals, power tools, vehicles, and fertilizers that he believes were manufactured out of state, as well as used federal interstate highways to drive to work, was not entitled to individual coverage under the FLSA. *Bellows v. Darby Landscaping*, No. WDQ-15-885, 2016 WL 264914, at *3-4 (D. Md. 2016). However, Plaintiff also states that he opens interstate mail and deliveries and makes telephone calls to insurance companies and vendors outside of South Carolina. Employees who *regularly* handle interstate mail and telephone calls may be engaged in commerce. *See Rains v. East Coast Towing and Storage, LLC*, 820 F. Supp. 2d 743, 747-48 (E.D. Virginia Sept. 20, 2011) (explaining that activities must be regular and recurring to be considered covered under the Act and noting that the plaintiff in that case did not allege he handled interstate phone calls); *Russell v. Cont. Restaurant, Inc.*, 430 F. Supp. 2d 521, 524 (D. Md. 2006) (including employees who regularly handle interstate mail and telephone calls as engaged in commerce). While admittedly unclear the nature of the phone calls, because one of his regular job duties was to make and answer telephone calls, including calls from insurance companies and unspecified vendors and person outside South Carolina, as well as open interstate mail and deliveries on behalf of a patient, Plaintiff raises a genuine issue of material fact as to whether Plaintiff was personally engaged in commerce as part of his regular and recurring job duties. Accordingly, this Court finds that Plaintiff has raised a genuine issue of material fact as to whether individual coverage exists under the FLSA.

Defendants also argue that summary judgment is appropriate because Plaintiff is not an employee of Defendant, but rather is an independent contractor. Plaintiff argues he has established that he is an employee, rather than an independent contractor of Defendant Open Hands. Plaintiff argues that under the FLSA, an analysis of the "economic realities test," used to differentiate between an

14

employee versus an independent contractor, supports a finding that he is an employee *See United States v. Silk*, 331 U.S. 704 (1947). First, while Plaintiff indeed discusses the economic realities test, Plaintiff relies almost exclusively upon his own affidavit as his only evidence that he is an employee, rather than an independent contractor of Defendant. Plaintiff further attempts to shift the burden by arguing that Defendants have failed to show that Plaintiff is an independent contractor or addressed the *Silk* factors. *See Purdham v. Fairfax County School Bd.*, 637 F.3d 421, 427 (4th Cir. 2011) (noting that individuals seeking compensation pursuant to the FLSA bear the initial burden of proving the existence of an employee-employer relationship). Nonetheless, Defendants provided an independent contractor agreement purportedly signed by Plaintiff, executed on October 9, 2017. [ECF #15-4]. Plaintiff does not allege that he did not execute the agreement but instead argues that the documents provided by Defendants have not been properly authenticated. Defendants further provide Plaintiff's W-9 Forms that are dated from 2015 and 2017, as well as several 1099 Forms dated 2016 and 2015. These documents tend to support a finding that Plaintiff is an independent contractor. Still, while the tax documents cast doubt on Plaintiff's claim that he is an employee, these documents are not dispositive on the issue of the existence of an employer-employee relationship. Further, the independent contractor agreement is dated for October 9, 2017, a date occurring after the filing of this lawsuit, which happened on August 11, 2017. Further, there are not tax documents to cover all of the years that Plaintiff states he was working for Open Hands. Therefore, Plaintiff raises a genuine issue of material fact as to whether Plaintiff is an employee or an independent contractor of Defendant Open Hands.

**2. Merits of FLSA Overtime Wages Claim**

In the Complaint, Plaintiff alleges that Defendant failed to pay Plaintiff overtime wages. Defendant argues that Plaintiff has failed to establish a claim for relief under the FLSA because

15

Plaintiff does not provide sufficient evidence upon which this Court can ascertain whether he is owed overtime wages. Plaintiff argues that he has provided sufficient allegations to adequately plead this cause of action in his Complaint. Defendants styled the Motion as one requesting dismissal, or in the alternative, motion for summary judgment. With respect to the merits of the FLSA claim, Defendant argues that not only does Plaintiff fail to state a claim for relief, but that the claims should be dismissed as a matter of law because the claim is time-barred. In its reply, Defendant further states that Plaintiff has failed to state a claim because Plaintiff provided no evidence or stated with particularity how much overtime he worked. Therefore, it appears that Defendant argues that Plaintiff's claim should be dismissed pursuant to 12(b)(6), and under the more stringent standard under summary judgment. When a movant expressly captions its motion "in the alternative" for summary judgment, and submits matters outside the pleadings for the Court to consider, the parties are deemed to have notice that conversion of the matter under Rule 12(d) may occur, and this Court has no obligation to notify the parties of the obvious. *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). Both parties have presented documents outside the pleadings to be considered in this case. Morever, discovery has ended in this case, and Plaintiff has not requested any additional time to conduct discovery or provide documents for the Court to review in considering a ruling on its FLSA claim.

A motion filed under Rule 12(b)(6) challenges the legal sufficiency of the complaint. *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 338 (4th Cir. 2006) (overruled on other grounds). All that is required is a short, plain statement of the claim showing that the pleader is entitled to the requested relief. *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). The factual allegations must state a claim for relief that is plausible on its face. *Id.* Under the FLSA, an employee who works in excess of forty hours per workweek shall be compensated at a rate of not less than one and one-half times the

regulate rate for each hour in excess for forty-hours the Plaintiff worked. 29 U.S.C. § 207. Within the Complaint, Plaintiff provides that from November 2014 until the present, he averaged approximately 8 to 15 hours of overtime "per week in each week of his employment." [ECF #21, p. 17]. Plaintiff does not allege how many weeks he worked during this time period, specifically whether he worked all fifty-two weeks in each year he was employed. However, Plaintiff asserts that because he specifically pled that he failed to receive overtime, averaging 8-15 hours in "each week that he worked," and that because he asserted that he was employed by Defendant from November 2014 to present, these allegations are sufficient to establish a cause of action under the FLSA. Under the 12(b)(6) failure to state a claim standard, these statements meet this more lenient standard.

As to the merits of the claim, under the Rule 56 summary judgment standard, Plaintiff alleges that Defendant "repeatedly and willfully" violated the FLSA by failing to compensate him for overtime within his Complaint. Under the FLSA, a two-year statute of limitations applies, unless an employee proves willfulness on the part of an employer, in which case a three-year statute of limitations applies. 29 U.S.C. § 255. By providing a two-tier system, Congress intended to draw a distinction between ordinary violations and willful violations. *Hantz v. Prospect Mortg., LLC*, 11 F. Supp.3d 612, 616 (E.D. Va. 2014). An employer who either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA will have willfully violated the statute. *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 357-58 (4th Cir. 2011) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)). Plaintiff does not provide any evidence suggesting knowledge or reckless disregard on the part of Defendant in failing to pay Plaintiff overtime hours in violation of the FLSA. Moreover, within his response Plaintiff does not argue that Defendant willfully violated the FLSA.

Accordingly, because this lawsuit was filed on August 11, 2017 any claims accruing prior to August 11, 2015 are certainly time-barred under the two year statute of limitations.

As to overtime wages which fall in a time period that is not time-barred, to succeed on a 29 U.S.C. §207(a)(1) claim for uncompensated overtime wages, Plaintiff bears the burden of proving that he performed work for which he was not properly compensated. *Alson v. DIRECTV, Inc.*, 254 F. Supp. 3d 765, 787 (D.S.C. May 26, 2017). At this stage in the litigation, Plaintiff must come forward with some evidence beyond blanket allegations that Defendant failed to pay overtime to establish his claim. Plaintiff provides his statements in his affidavit wherein he alleges he worked "in excess of 40 hours" each workweek, and that he worked "as many as 84 hours in a workweek" to support his claim that he was not properly compensated for overtime hours. [ECF #2-1, ¶ 17].[9] The Complaint alleges an average of 8-15 hours per week. Plaintiff does not state an average of overtime hours within his own affidavit, beyond that he worked in excess of 40 hours. Nor does Plaintiff state how many weeks he worked between November 2014 and the day the lawsuit was filed on August 11, 2017. Based on the affidavit alone, this Court is unable to surmise whether Plaintiff worked every single week from November 2014 until the date of the filing of this lawsuit on August 11, 2017, or some other number or workweeks in between due to events such as illness or vacation. In fact, in his response, Plaintiff does not point to other evidence beyond his own affidavit regarding the length of time for pay periods, to point toward evidence to support his claim that he indeed worked an average of "approximately 8 to 15" hours of overtime each week, or that he regularly worked "up to" 84 hours in a workweek. *Geer v. McGregor,* No. 8:10-2219, 2013 WL 808838, at *3 (D.S.C. March 5, 2013) (explaining that in the absence of employment records, an employee may meet his burden by proving that he has performed

---

[9] Plaintiff argues in his Response Brief that he was required to work 48-84 hours each week. [ECF #21, p. 13]. In other words, Plaintiff worked somewhere between 8-44 hours of overtime each week. This allegation appears in conflict with the allegations in the Complaint that assert Plaintiff worked an average of 8-15 hours per week.

work for which he was improperly compensated and produce sufficient evidence to establish the amount and extent of that work as a matter of reasonable inference). However, Plaintiff did provide Defendant's Initial Disclosures, which includes bank records purportedly from 2017 which Defendant identified as Wells Fargo Pay Records of Plaintiff. [ECF #21-2, p. 3].[10] At least some of these records, identifying Plaintiff and his pay rate, show that Plaintiff worked as many as 168 hours per pay period at a rate of $10.50 per hour. [ECF #21-2]. This evidence, provided to Plaintiff by Defendant, suggests Plaintiff worked in excess of forty hours per week. The bank records cover nearly the entire year for 2017. Though Defendant argues that Plaintiff is an independent contractor, this Court has previously determined there is an issue of fact as to whether Plaintiff is an employee. The bank records show that Plaintiff was paid every two weeks in 2017, and for many of these two week periods, the bank statements list "168" as the number of hours worked, and compensation at $1,764.00 . Therefore, for the claims which are not time-barred, there is a genuine issue of material fact as to whether Plaintiff was properly compensated by Defendant Open Hands for any alleged overtime hours he may have worked.

## Conclusion

The Court has thoroughly reviewed the entire record, including the pleadings, Defendants' Motion to Dismiss, or in the Alternative Motion for Summary Judgment [ECF #15], Plaintiff's response to the motion [ECF #21], Defendants' reply [ECF #22] and the applicable law. For the reasons stated above, Defendants' Motion to Dismiss, or in the Alternative Motion for Summary Judgment is

---

[10] Plaintiff also bears the burden of proof to show, as an element of his claim, that the employer had actual or constructive knowledge of his uncompensated overtime work. *Bailey v. County of Georgetown*, 94 F.3d 152, 157 (4th Cir. 1996); *see also Alston v. DIRECTV, Inc.*, 254 F. Supp. 3d 765, 773 (D.S.C. May 26, 2017); *Butler v. DirectSAT USA, LLC*, 55 F. Supp. 3d 793, 803 (D. Md. Oct. 16, 2014). Defendant has not argued that Plaintiff has failed his burden in this regard, and the bank records in its possession support an inference that they had knowledge of Plaintiff's hours worked and rate of pay, at least for the time period covered by these bank records.

**GRANTED in part and DENIED in part.** Plaintiff's Complaint against Defendant James Holmes is dismissed without prejudice. As to Defendant Open Hands, the FLSA overtime wages claims made by Plaintiff that are time-barred (those prior to August 11, 2015) under the FLSA's two year statute of limitations are dismissed with prejudice. The remaining overtime wage claims brought pursuant to the FLSA which are not time-barred survive summary judgment.

**IT IS SO ORDERED**.

November 14, 2018                                              s/ R. Bryan Harwell  
Florence, South Carolina                              R. Bryan Harwell  
                                                                                United States District Judge